## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON

**JOHN JINK LYNCH,**

      **Plaintiff,**

**v.**                                         **Case No. 2:13-cv-01470**

**WEXFORD HEALTH SOURCES, INC.,**
**DR. EMIL DAMEFF, Physician,**
**DR. HOMA RASHID, Physician,**
**DR. PHILIP SHOAF, Physician,**
**SANDRA MAY, Physician Assistant,**
**ANNA KINCAID, Health Services Administrator,**
**PAUL PARRY, Associate Warden of Security,**
**SHERRY COOK, Unit Manager, and**
**DAVID BALLARD, Warden,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On January 25, 2013, the plaintiff, who is incarcerated at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia, filed an Application to Proceed Without Prepayment of Fees and Costs (ECF No. 1) and a Complaint under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs (ECF No. 2).[1] This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] The plaintiff raised similar allegations of deliberate indifference to his serious medical needs in a prior Complaint filed in this court in *Lynch v. Rubenstein*, Case No. 2:12-cv-00399, which was dismissed, without prejudice, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, on April 13, 2012. (Case No. 2:12-cv-00399, ECF No. 7).

**STANDARD OF REVIEW**

Pursuant to the provisions of 28 U.S.C. § 1915A, the court is obliged to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On review, the court must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. This screening is generally done prior to consideration of an Application to Proceed without Prepayment of Fees and Costs, and notwithstanding the payment of any filing fee. A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the

2

elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

\* \* \*

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. Because service of process has not occurred, a motion to dismiss has not been filed in this case. Such a motion, filed pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, asserts that the complaint fails "to state a claim upon which relief can be granted," which is the same standard set forth in 28 U.S.C. § 1915A.

## THE PLAINTIFF'S ALLEGATIONS

The plaintiff's Complaint alleges that the defendants have been deliberately indifferent to the plaintiff's serious medical needs. The Complaint alleges that the plaintiff was previously diagnosed and treated for skin cancer on his nose, upper lip area, facial area, temple area and head (scalp), which he believes has returned. The plaintiff further contends that he has sensitive areas on his face, nose, forehead and temple due to cancer removal and "skin peel" procedures that left scars and exposed and damaged nerve endings. The Complaint further contends that the plaintiff has a curvature of the spine and multiple bone spurs on his spine. (ECF No. 2 at 5-6).

The plaintiff alleges that the defendants (1) discontinued or failed to re-order medications for chronic illnesses; (2) routinely changed medications without notice to the plaintiff or checking medical records; (3) instructed the plaintiff to purchase over the counter medications from the commissary that are less effective than prescriptions; (4) refused to follow the instructions of outside specialists; (5) refused to allow the plaintiff to return to specialists for follow-up; (6) refused to authorize the plaintiff to see specialists for diagnostic purposes when such diagnoses could not be handled in-house; and (7) denied the plaintiff a permanent shave slip permitting him to limit shaving due to his skin condition.  The plaintiff further alleges that the defendants have placed him in continuous pain and that Wexford Health Sources, Inc. has allowed MOCC staff and administrators to interfere with his treatment.  (*Id.* at 6-9).

The Complaint contains nine counts; one against each defendant.  In Count One, the plaintiff alleges that Wexford Health Sources, Inc. ("Wexford"), a Pennsylvania corporation serving as the contracted medical provider at MOCC, as a matter of custom or policy, authorized the deliberate indifference of its employees and agents to the plaintiff's and other inmates' serious medical needs in an effort to minimize costs under their contract "for profit first."  (*Id.* at 9-10).  The Complaint further alleges that Wexford "has permitted Defendant Emil Dameff to 'run rampant' and 'unsupervised' as to the quality of treatment that he and other [Wexford] Defendants have been providing and not providing."  (*Id.* at 10).

In Counts Two, Three and Four, the plaintiff alleges that Dr. Emil Dameff, former Medical Director, Dr. Homa Rashid, Medical Director, and Dr. Philip Shoaf, Regional Medical Director, all Wexford employees or agents, have refused to review the plaintiff's medical records to determine his serious medical needs, refused to refer the plaintiff to a

4

dermatologist or other skin specialist, and have refused the plaintiff pain medication. (*Id.* at 10-12). The plaintiff further alleges that, on or about September 27, 2011, Dr. Dameff rescinded his permanent shave slip, which now requires him to shave in accordance with prison policy, causing him "unnecessary harm, pain and self-mutilation." (*Id.* at 10).

In Count Five, the plaintiff alleges that Sandra May, a Physicians' Assistant employed by Wexford, violated policies and procedures by refusing to refer the plaintiff to see the Medical Director (Doctor) within a specified time and refused to prescribe the plaintiff pain medication. (*Id.* at 12-13). In Count Six, the plaintiff alleges that Anna Kincaid, Wexford's former Health Services Administrator, was aware of the plaintiff's complaints of non-treatment through her role in answering grievances, but refused to review the plaintiff's medical file and refused to offer him assistance. He further contends that Kincaid routinely interfered with the medical decisions of the Medical Director and refused to perform her duties and obligations pursuant to Wexford's contract. (*Id.* at 13).

In Count Seven of his Complaint, the plaintiff alleges that Paul Parry, the Associate Warden of Security at MOCC, was aware of harassment the plaintiff was receiving from MOCC staff about his shave slip, but did nothing to stop it. (*Id.* at 13-14). In Count Eight of the Complaint, the plaintiff alleges that Sherry Cook, his Unit Manager, denied his grievances and "refused to assist him in his medical endeavors with Wexford," despite being aware of his serious medical needs, and despite routinely doing so for other inmates. (*Id.* at 14-15). In Count Nine of the Complaint, the plaintiff alleges that David Ballard, the Warden of MOCC, refused to abide by WVDOC policies and procedures and state and federal law "by refusing to perform his duty and obligation to ensure that the plaintiff received required and necessary medical care" under the terms of the contract with Wexford, despite being "well aware of the plaintiff's serious medical needs" because

he responds to all grievances and also had been contacted by the plaintiff's family and other advocates on his behalf.  (*Id.* at 15).

The plaintiff seeks monetary damages, as well as injunctive relief in the form of "proper medical treatment," a permanent shave slip, compliance by MOCC and other West Virginia Division of Corrections ("WVDOC") members with state and federal laws governing the treatment of incarcerated persons, and an audit of Wexford's contract with the State of West Virginia. (*Id.* at 21).

## ANALYSIS

Federal courts are discouraged from interfering with the daily operations and administration of state correctional facilities.  *See Bell v.* Wolfish, 441 U.S. 520, 662 (1979) (warning courts against becoming "enmeshed in the minutiae of prison operations.") Inquiry of federal courts into prison management must be limited to the issue of whether a particular administrative action violates the federal Constitution.  *Id.*

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.*, at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "sufficiently culpable state of mind;'" that is, a "deliberate indifference to inmate health

or safety." *Id.*, at 834. (Citations omitted.)  The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.,* at 837.

The plaintiff's Complaint, even when read liberally, contains insufficient allegations that the defendants have exhibited a deliberate indifference to the plaintiff's serious medical needs, in violation of his Eighth Amendment rights.  "In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.  *See id.*  Nevertheless, mere negligence

or malpractice does not violate the Eighth Amendment.  *See Estelle*, 429 U.S. at 106.

*Miltie*r, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by correctional officials and health care providers is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. *See Farmer*, 511 U.S. at 832-35; *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007).  For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints.  The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye.  *Id.* at 1286.  Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored.  *Id.*  The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical

need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

As noted above, while the plaintiff need not assert detailed factual allegations, the Complaint must contain "more than labels and conclusions" and the "factual allegations must be enough to raise a right to relief above the speculative level." The plaintiff's Complaint contains allegations that are largely conclusory and the facts, as alleged, even taken as true, do not give rise to a plausible claim of deliberate indifference to a serious medical need against each of the defendants.

Because Wexford is a contracted medical provider for the WVDOC, a state agency with oversight of MOCC, the deliberate indifference standard is applicable to the conduct of Wexford and its employees. *West v.* Atkins, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law"). However, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original).

9

In the instant Complaint, the plaintiff alleges nothing beyond his speculative and conclusory assertions that the conduct of Wexford and its employees is driven by a "for profit first" mentality and "an interest in ensuring that the costs does not exceed what dips into the profit margin . . . ." (ECF No. 2 at 10, 19). Likewise, the plaintiff's allegations against the individual Wexford employees are too conclusory to establish plausible claims of deliberate indifference on behalf of those individuals. Rather, many of the plaintiff's threadbare allegations appear to support nothing more than a disagreement over the treatment the plaintiff speculates to be medically necessary, which is not actionable under section 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Furthermore, Warden David Ballard, Associate Warden Paul Parry, and Unit Manager Sherry Cook are WVDOC employees and supervisory officials who had no direct involvement in the plaintiff's medical treatment. It is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel. *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995). Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853. Again, the facts against these defendants, as alleged in the Complaint, are conclusory in nature and do not rise above the speculative level.

10

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that, pursuant to the standards set forth in *Twombly* and *Iqbal*, the plaintiff's Complaint (ECF No. 2) fails to state a claim upon which relief may be granted, and should be dismissed under 28 U.S.C. § 1915A.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** the plaintiff's Complaint (ECF No. 2) under 28 U.S.C. § 1915A, and **DENY** his Application to Proceed without Prepayment of Fees and Costs (ECF No. 1), but not require any filing fee.

The plaintiff is notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984).   Copies of such objections shall be provided to Judge Johnston.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to the plaintiff.

March 2, 2016

Dwane L. Tinsley
United States Magistrate Judge

12