**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JOHN JINK LYNCH,

                    Plaintiff,

v.                                CIVIL ACTION NO.   2:13-cv-01470

WEXFORD HEALTH SOURCES, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Application to Proceed without Prepayment of Fees and Costs, (ECF No. 1), and 42 U.S.C. § 1983 civil rights complaint (the "Complaint"), (ECF No. 2).   On January 28, 2013, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation for disposition ("PF&R"). (ECF No. 3.)   On April 9, 2013, the Clerk transferred the referral of this action to United States Magistrate Judge Dwane L. Tinsley.   (ECF No. 4.)   Magistrate Judge Tinsley filed his PF&R, (ECF No. 13), on March 2, 2016, recommending that this Court dismiss Plaintiff's Complaint under 28 U.S.C. § 1915A and deny his application to proceed without prepayment of fees and costs.

Objections to the PF&R in this case were due on March 21, 2016.   In a letter-form response dated that day, March 21, 2016, Plaintiff requested an extension of time in which to respond to the PF&R.   (ECF No. 14.)   On March 24, 2015, Plaintiff filed a formal motion

1

requesting more time to respond.   (ECF No. 15.)   On that same day, Plaintiff submitted a document entitled "Plaintiff's Objections to Portions of Proposed Findings and Recommendations."   (ECF No. 16.)   That document reiterated Plaintiff's reasons for filing the objections out of time and attached several documents intended to "support the allegations raised by the Plaintiff."[1]   (*Id.* at 2.)   For good cause shown, the Court **GRANTS** Plaintiff's requests for additional time to respond to the PF&R, (ECF Nos. 14 and 15), and will treat Plaintiff's objections (the "Objections"), (ECF No. 16), as timely filed.

For the reasons discussed herein, the Court **SUSTAINS** the Objections, (*id.*), **DECLINES TO ADOPT** the PF&R, (ECF No. 13), except as provided in this Memorandum Opinion and Order, and **RE-REFERS** this case, including consideration of Plaintiff's Application to Proceed without Prepayment of Fees and Costs, (ECF No. 1), to Magistrate Judge Tinsley for further proceedings consistent with this Memorandum Opinion and Order.

## *I.*     *Background*

Plaintiff filed the instant § 1983 civil rights complaint (the "Complaint") on January 25, 2013, alleging that various officials at Mount Olive Correctional Complex ("Mount Olive") and Wexford Health Sources ("Wexford"), the independent medical provider contracted by the State of West Virginia to provide medical services to inmates at Mount Olive, were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

The gist of Plaintiff's complaint is that despite being diagnosed with several serious medical conditions requiring ongoing medical treatment and monitoring, the defendants have

---

[1] Plaintiff submitted further "additional documentation" for the Court's consideration on March 28, 2016.   (ECF No. 17.)

provided "no treatment or extremely limited treatment which amounts to no treatment, and as such leaves Plaintiff in constant pain." (ECF No. 2 at 7.) In particular, Plaintiff alleges that he has been diagnosed with multiple skin cancers on his face and head, including on his nose, upper lip area, temple area, and scalp. (*Id*. at 5.) Plaintiff alleges further pain and sensitivity on his face as the result of a "Skin Peel procedure," undertaken to treat his facial skin cancers and resulting in skin removal, scarring, and exposed and damaged nerve endings. (*Id*. at 5–6.) Finally, Plaintiff's Complaint asserts that he has been diagnosed with curvature of the spine and multiple bone spurs on the spine, conditions that cause Plaintiff "continuous pain." (*Id*. at 7.)

Plaintiff alleges that the defendants named in the current complaint have perpetuated his pain and failed to properly treat these serious medical conditions in numerous ways. Several of his allegations pertain to his receipt of prescription medicine, arguing that the defendants allowed Plaintiff to run out of necessary medication for days at a time, changed or discontinued his medicine without notice, and did not follow up with Plaintiff to determine the medical effect of the alterations in drug treatment. (*Id*. at 6.) Plaintiff also avers that Wexford officials refused to order surgery necessary to correct his spinal condition and allowed Mount Olive officials to interfere with and dictate treatment strategies. (*Id*. at 7–8.) In particular, he alleges that Sandra May, a physician's assistant at Wexford, wholly refused to treat Plaintiff for his back condition or refer him to a doctor for further treatment. Ms. May's alleged failure of treatment, including the failure to prescribe any pain medication, left Plaintiff "in unnecessary pain." (*Id*. at 13.)

Most importantly, Plaintiff alleges that the named defendants "at numerous times refused to follow instructions of Medical Specialists once [Plaintiff] returned from treatment at area medical facilities," and refused to allow follow up visits with outside cancer specialists for

3

diagnostic testing and treating even when it became obvious that the skin cancer on Plaintiff's face had reoccurred.  (*Id*. at 7.)   Not only did Wexford officials refuse to refer Plaintiff out to see the specialists necessary to treat these severe medical conditions, Plaintiff alleges, but they provided such "extremely limited" treatment on site as to amount to "no treatment" at all.  (*Id*.)   Plaintiff alleges that Homa Rashid, a Wexford Medical Director, and Philip Shoaf, a Regional Medical Director for Wexford, each refused to review Plaintiff's medical records, denied him any referral to see an outside specialist even when his facial skin cancer reoccurred and it "became clear" that he could not be treated on site, and declined to prescribe Plaintiff any medication for his various conditions despite the fact that he was in constant pain.  (*Id*. at 11–12.)

Finally, Plaintiff alleges that the defendants exhibited deliberate indifference to his medical condition by revoking his permanent shave slip and requiring him to shave sensitive areas of his face afflicted by skin cancer, a process Plaintiff alleges forces him to "inflict upon himself pain and self-mutilation."  (*Id*. at 8.)   In particular, Plaintiff alleges that Emil Dameff, a former Regional Medical Director for Wexford, "personally rescind[ed]" Plaintiff's shave slip despite the fact that the slip was issued in the first place "due to [Plaintiff's] Facial Skin Cancer, which, when shaved, would cause Plaintiff to cause unnecessary harm, pain, and self-mutilation."  (*Id*. at 10.)

Plaintiff seeks monetary damages in the form of $5,000 from each defendant, as well as various forms of injunctive relief, including "[p]roper medical treatment from Wexford Health Sources," compliance by Mount Olive officials with state and federal law governing the treatment of inmates, enforcement of Plaintiff's permanent shaving slip, and an "audit of the Wexford Health Sources contract."  (*Id*. at 22.)

Magistrate Judge Tinsley examined Plaintiff's Complaint under the standard set forth in 28 U.S.C. § 1915A, which requires a district court to review as soon as feasible any prisoner complaint seeking redress from a governmental entity or its officers or employees.   Before ordering service of process on any of the named defendants, the Magistrate Judge issued his PF&R, which found that Plaintiff's complaint, "even when read liberally, contains insufficient allegations that the defendants have exhibited a deliberate indifference to the plaintiff's serious medical needs, in violation of his Eighth Amendment rights."   (ECF No. 13 at 7.)   Determining Plaintiff's allegations to be mostly "conclusory" and "threadbare," the PF&R recommends that, "pursuant to the standards set forth in *Twombly* and *Iqbal*, the plaintiff's Complaint . . . fails to state a claim upon which relief may be granted, and should be dismissed under 28 U.S.C. § 1915A."   (*Id.* at 11.)

## II.    Legal Standard

### A.    Review of the PF&R

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.      28 U.S.C. § 1915A Initial Screening**

Pursuant to the Prisoner Litigation Reform Act, a district court is charged with responsibility to review, "before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."   28 U.S.C. § 1915A(a).   When performing this initial screening function, a court "must identify 'cognizable claims or dismiss the complaint, or any portion [thereof, that] is frivolous, malicious, or fails to state a claim upon which relief may be granted.'"[2]   *McLean v. United States*, 566 F.3d 391, 394 (4th Cir. 2009) (alteration in original) (quoting 28 U.S.C. § 1915A(b)(1)); *see also Brown v. Brock*, ---F. App'x---, 2015 WL 8946033, at *1 (4th Cir. 2015) ("[A] prisoner's complaint seeking redress from the Government that is frivolous, malicious, or fails to state a claim may be dismissed sua sponte.").

A complaint is frivolous where it "lacks an arguable basis either in law or in fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Even where a complaint is not frivolous, however, dismissal under § 1915A is proper where that complaint fails to state a claim upon which relief can be granted.   In determining whether a complaint states a claim upon which relief can be granted, a court is to employ the same standard that is used when reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *See De'lonta v. Johnson*, 708 F.3d

---

[2] Because Plaintiff seeks to proceed in forma pauperis, the statute governing in forma pauperis proceedings, 28 U.S.C. § 1915, is also applicable to his complaint.   As relevant here, that statute requires a district court to dismiss an in forma pauperis case, "at any time," if the court determines that the plaintiff's allegation of poverty is untrue or that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.   28 U.S.C. § 1915(e).   Section 1915(e) uses language identical to § 1915A, and "[b]ecause of their obvious similarity, courts may have the option in a particular case of dismissing [in forma pauperis] prisoner litigation for failure to state a claim under more than one of these provisions."   *McLean v. United States*, 566 F.3d 391, 404 (4th Cir. 2009).   Accordingly, because the present case is such a case where § 1915(e) and § 1915A both apply, and because the two statutes set forth the same standard, the Court does not find it necessary to independently address the application of § 1915(e).

520, 524 (4th Cir. 2013) (applying the "same standards" in reviewing a district court's dismissal for failure to state a claim under § 1915A as those employed to review a Rule 12(b)(6) dismissal); *Johnson v. Fields*, 616 F. App'x 599, 600 (4th Cir. 2015) (same); *see also Richards v. Jones*, 31 F. Supp. 3d 630, 633 (D. Del. 2014) ("The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions." (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999))).  Accordingly, "[d]ismissal is proper only if the plaintiff has failed to 'present factual allegations that state a claim to relief that is plausible on its face.'"  *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (quoting *Jackson v. Lightsey*, 775 F.3d 170 178 (4th Cir. 2014)).

In applying this plausibility standard, a Court must utilize a two-pronged approach.  First, it must separate the legal conclusions in the complaint from the factual allegations.  Second, assuming the truth of only the factual allegations, the Court must determine whether the plaintiff's complaint permits a plausible inference that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Labels, conclusions and a "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  What is required are well-pleaded factual allegations, and "a court should not dismiss an action for failure to state a claim, 'unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Brown*, 2015 WL 8946033, at *2 (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003)).  "Th[e] plausibility standard requires only that the complaint's factual allegations 'be

enough to raise a right of relief above the speculative level.'" *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).

The Court is mindful, however, that Plaintiff is proceeding pro se.   As such his pleadings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).   Liberal construction of pleadings is "particularly appropriate where, as here, there is a pro se complaint raising civil rights issues."   *Jehovah*, 798 F.3d at 176 (quoting *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009)).

### III.     Discussion

**A.     Plaintiff's Objections**

As noted above, Plaintiff submitted objections to the PF&R that the Court considers timely for the reasons stated in Plaintiff's motions for extension of time in which to file objections.   In his objections, Plaintiff agrees with the Magistrate Judge that he has no claim against any of the Mount Olive officials named in the Complaint.   (ECF No. 16 at 3.)   Accordingly, the Court **ADOPTS** the PF&R insofar as it dismisses Plaintiff's claims against Paul Parry, Associate Warden of Security, Sherry Cook, Unit Manager, and David Ballard, Warden.   As to the Wexford officials named in the complaint, however, Plaintiff objects to the PF&R's "blanket" characterization of his allegations as speculative and conclusory.   (*Id.* at 2.)   Rather than submitting substantial objections arguing for the sufficiency of the allegations in the Complaint, however, Plaintiff concludes that the Magistrate Judge's recommendation "stems from lack of supporting documentation to support the allegations raised by the Plaintiff."   (*Id.*)   Accordingly, Plaintiff's objections consist primarily of a series of exhibits providing documentary evidence of his medical condition and the defendants' response thereto.   Plaintiff requests that this Court (1) permit the

8

submission of such documentation, (2) take the documents into consideration in reviewing the Magistrate Judge's decision, and (3) "reserve any further decision on these matters until such time that all such supporting documentation has been properly considered."  (*Id*. at 3.)

As an initial matter, the Court notes that the question of whether to consider additional evidence submitted after a magistrate judge's recommendation has been issued "rests within the sound discretion of the district court."  *Doe v. Chao*, 306 F.3d 170, 183 n.9 (4th Cir. 2002); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) (providing that, when resolving objections to a magistrate judge's proposed disposition, a district judge "*may* accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" (emphasis added)).   "While the court may receive further evidence, attempts to introduce new evidence after the magistrate judge has acted are disfavored."  *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010); *see also Simmons v. Ozmint*, Civil Action No. 6:08-cv-00860-RBH, 2009 WL 4730628, at *2 (D.S.C. Dec. 4, 2009) ("To allow parties to delay presentation of all of their evidence until after an adverse recommendation by a magistrate judge would defeat the purpose of [Rule 72(b)]"), *aff'd*, 379 F. App'x 300 (4th Cir. 2010).   In this case, the Court does not find it necessary to consider Plaintiff's additional evidence because it determines that, at this early stage of the litigation, Plaintiff has stated an Eighth Amendment claim on the face of his Complaint.   Further development of the record will be more appropriate in later stages of the litigation, once the remaining defendants are appropriately served and have the chance to engage in discovery.

For the reasons discussed below, the Court **SUSTAINS** Plaintiff's Objections and **DECLINES TO ADOPT** the PF&R insofar as it recommends dismissal of the Wexford defendants.

**B.     Analysis**

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.   Importantly, § 1983 is not itself the source of any substantive rights.   Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   "A federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'"   *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this case, as his Complaint presently stands, Plaintiff alleges that his Eighth Amendment rights have been violated at the hands of officials working for Wexford Health Sources, a private company that contracts with the State of West Virginia to provide medical care for state inmates. Although these defendants are not technically state entities employees, this fact does not by itself shield them from acting "under color" of state law.   *See, e.g.*, *Haavistola v. Cmty. Fire Co. of Rising Sun*, 6 F.3d 211, 215 (4th Cir. 1993) (surveying Supreme Court precedent and identifying

"three situations in which particular conduct by a private entity constitutes 'state action,'" and can accordingly be classified as being under color of state law).   In the context of medical assistance for state prison inmates, the Supreme Court has explicitly recognized that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights."   *West*, 487 U.S. at 56.

Accordingly, private corporations and medical professionals who contract with a state to provide medical care to that state's inmates have generally been deemed to act under color of state law.   As stated by the Fourth Circuit:

> Regardless of the physician's employment relationship with the state, any physician authorized by the state to provide medical care to a prisoner exercises power that is traditionally the exclusive prerogative of the state.   If the physician abuses this power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law—not because the state has employed a bad physician, but because the state has incarcerated the prisoner and denied him the possibility of obtaining medical care on his own.

*Conner v. Donnelly*, 42 F.3d 220, 225 (4th Cir. 1994) (citing *West*, 487 U.S. at 55); *see also Johnson v. Karnes*, 398 F.3d 868, 876 (6th Cir. 2005) ("[P]rivate physicians serving inmate populations satisfy the state-action requirement of [§ 1983]."); *Michel v. Contabile*, Civil Action No. 7:08-cv-00533, 2008 WL 4533967, at *1 (W.D. Va. Oct. 8, 2008) ("A private doctor who is knowingly hired by state officials to treat a state-held inmate, whether under contract or not, acts under color of law so as to be subject to suit under § 1983.").   On this basis, Wexford and its employees and officials are appropriately considered state actors for purposes of the present § 1983 action.   *See, e.g.*, *Ojeda v. Procter*, Civil Action No. 2:10cv126, 2011 WL 240447, at *1 (N.D. W. Va. Jan. 24, 2011) (finding Wexford to be a state actor for purposes of a § 1983 suit).

The remaining issue is whether Plaintiff's Complaint adequately alleges the violation of a federal right, in this case the Eighth Amendment right to be free from cruel and unusual punishment.   The Supreme Court has recognized that state governments have an obligation to provide medical care for the inmates they incarcerate, and accordingly that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."   *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).   An Eighth Amendment claim based on deliberate indifference to serious medical needs has two prongs, one objective and one subjective.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).   "Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Scott v. Clarke*, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014) (collecting cases for the proposition that "a threshold element of an Eighth Amendment claim premised upon allegations of deficient medical care is the claimant's showing that the health problem of which she complains involves a 'serious medical need'").

The subjective prong goes to culpability, and in "prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."   *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991).   To establish a constitutional violation, a prisoner must establish that, "objectively assessed, he had a 'sufficiently serious' medical need to require medical treatment, and that a [prison official], subjectively aware of the need and of its seriousness,

12

nevertheless acted with 'deliberate indifference' to it by declining to secure available medical attention." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995) (citation omitted). Deliberate indifference is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178.   What is required is both awareness and disregard of an "excessive risk" to inmate health or safety; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Nevertheless, although it "remains open to . . . officials to prove that they were unaware even of an obvious risk to inmate health or safety," *id*. at 844, the subjective standard does not allow a prison official to "hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105.   Whether a given prison official exhibits deliberate indifference is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842; *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) (noting that a claim of deliberate indifference "implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice"); *Brice*, 58 F.3d at 105 ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] *did* know of it because he could not have failed to know of it.").   Where the evidence demonstrates that an official "merely refused to verify 'underlying facts that he strongly suspected to be true,' which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he 'declined to confirm

inferences of risk that he strongly suspected to exist,'" *id*. (quoting *Farmer*, 511 U.S. at 843 n.8), that official can be held liable notwithstanding his actual ignorance of the medical need at issue.

Under this standard, courts have emphasized that "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *see also Jackson*, 775 F.3d at 178. At the same time, however, a prisoner need not be subjected to a total failure of medical treatment to state a claim, and the fact that he received some treatment does not by itself doom an Eighth Amendment claim. *See De'Lonta*, 708 F.3d at 526 (rejecting argument that the provision of some treatment for the serious medical need at issue "necessarily" rendered the plaintiff's claim of deliberate indifference legally insufficient and stating that "just because [defendant officials] have provided [the plaintiff] with *some* treatment . . . it does not follow that they have necessarily provided her with *constitutionally adequate* treatment"); *Jehovah*, 798 F.3d at 181 (finding a § 1915A dismissal improper, even where the plaintiff received "extensive" treatment from the doctor defendants, where the treatment provided was nonetheless "consistent with the [plaintiff's] allegation that his doctors ignored and failed to treat many of his symptoms"); *Scott*, 64 F. Supp. 3d at 839 (finding a state prison's "failure to require or undertake corrective action and its 'hands-off' attitude towards its medical care contractors," resulting in the provision of sub-standard medical care, sufficient to allow finding of deliberate indifference).

Ultimately, "[a] constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an

14

individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *Morales Feliciano v. Calderon Serra*, 300 F. Supp. 2d 321, 341 (D.P.R. 2004) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)), *aff'd sub nom. Morales Feliciano v. Rullan*, 378 F.3d 42 (1st Cir. 2004).

At this stage in the litigation, Plaintiff has made sufficient factual allegations to raise his right to relief above the speculative level and state a claim for deliberate indifference to serious medical needs.   As to the objective prong of the analysis, Plaintiff specifically alleges that he has been diagnosed with facial skin cancer, curvature of the spine, and multiple bone spurs on the spine.   (ECF No. 2 at 5–6.)   Moreover, in alleging that the named defendants repeatedly refused to follow the instructions of outside medical specialists, (*id*. at 7), Plaintiff at the very least raises an inference that the doctors who diagnosed Plaintiff's serious medical conditions contemplated that the conditions would require ongoing medical treatment.   With respect to the facial skin cancer, Plaintiff's allegations paint a picture of sores and lesions in the highly visible area of the face and scalp, and taken as true demonstrate a serious medical need obvious enough to signify to any reasonable person the necessity of medical treatment.   *See Iko*, 535 F.3d at 241 (noting that an objectively serious medical need is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999))).

Accordingly, the Court finds that, with respect to facial skin cancer, Plaintiff's Complaint sets forth a serious medical need in satisfaction of the objective prong of the Eighth Amendment analysis.   *See Caldwell v. Hammonds*, 53 F. Supp. 2d 1, 9 (D.D.C. 1999) (finding that a plaintiff stated a deliberate indifference claim with allegations that prison officials delayed the plaintiff's

prescribed skin cancer treatment).   The Court further finds that Plaintiff's allegations with respect to his back condition also satisfy the first prong.   Again, Plaintiff alleges that this was a diagnosed condition requiring ongoing treatment and causing the plaintiff constant pain.   Accepting those allegations as the Court must at the present stage of the litigation, the Court finds that these averments of chronic and severe pain plausibly describe a serious condition requiring medical attention.   *See Adams v. S.W. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900–01 (4th Cir. 2013) (finding medical records demonstrating that arthritis and degenerative disc disease caused chronic pain in the plaintiff's back and leg sufficient to "raise a plausible claim that he had a serious medical condition" (citing *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) and *Gutierrez v. Peters*, 111 F.3d 1364, 1370–71 (7th Cir. 1997))).

With respect to the second prong, regarding the deliberate indifference of Wexford officials towards Plaintiff's serious medical needs, Plaintiff has similarly set forth sufficient factual allegations to state an Eighth Amendment claim.   Plaintiff alleges that four individual Wexford officials—Emil Dameff, Homa Rashid, Philip Shoaf, and Sandra May—directly failed to provide Plaintiff necessary medical care.   As documented above, Plaintiff alleges that each defendant refused to follow instructions from outside specialists regarding ongoing treatment procedures, refused to allow follow up visits with area specialists, and refused diagnostic tests and treatment that Plaintiff alleges was necessary to the treatment of his skin cancer and painful back condition.   Such allegations raise an inference that necessary medical treatment was not provided.   The result, according to Plaintiff's allegations, was medical treatment amounting to "no treatment or extremely limited treatment," and ultimately leaving Plaintiff in "constant pain."   (*Id*. at 7.)

Plaintiff specifically alleges that Dr. Dameff, with knowledge of Plaintiff's skin cancer, revoked Plaintiff's shave slip and required him to shave areas of his face that had been afflicted by prior and reoccurring skin cancer, causing Plaintiff "unnecessary harm, pain, and self-mutilation."   (*Id*. at 10.)   In other words, rather than sending Plaintiff to a specialist or otherwise treating a potentially life threatening condition, Dr. Dameff required the Plaintiff to exacerbate that condition in an undeniably painful way.   If true, Dr. Dameff's actions would demonstrate deliberate indifference towards Plaintiff's skin cancer.   *See McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by . . . providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); *De'lonta*, 708 F.3d at 525 (finding allegations that prison officials exacerbated a defendant's tendency towards self-mutilation sufficient to state a claim for deliberate indifference to a serious medical need).

Plaintiff's claims with respect to Defendants Rashid, Shoaf, and May assert a near total failure to treat Plaintiff's serious conditions, including a failure to refer Plaintiff to outside specialists for further evaluation and testing and a refusal to prescribe medication to ease the pain that Plaintiff "had endured for so very long, due to his condition, which is constantly painful." (ECF No. 2 at 12.)   It may very well turn out to be the case that such claims, "on closer inspection, amount to nothing more than a prisoner's disagreement with his diagnosis or prescribed treatment;" however, it remains the case at initial screening that "prison doctors violate the Eighth Amendment if they decline to provide the level of care they deem medically necessary or fail to adequately address a prisoner's complaints that the care he is receiving is not effective."

*Goodman v. Johnson*, 524 F. App'x 887, 889 (4th Cir. 2013) (citing *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990) and *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986)).

Here, Plaintiff squarely alleges that the level of care he received was plainly inadequate to treat his pain and reoccurring cancer despite the defendants' awareness of the obvious need for further treatment those conditions presented.   Accordingly, dismissal of the Complaint at this stage of the litigation would be premature.   *See Scott*, 64 F. Supp. 3d at 839 (collecting cases finding summary judgment inappropriate where evidence demonstrated that defendants had provided inadequate medical care by refusing to respond to sick call requests, refusing to refer a prisoner to an outside specialist, and refusing to prescribe pain medication); *Jehovah*, 798 F.3d at 181–82 (finding that plaintiff stated a claim where he alleged "that his doctors acknowledged some symptoms but ignored most, disregarded abnormal test results, and failed to treat any of his symptoms effectively"); *De'Lonta*, 708 F.3d at 526 and n.4 (noting that while a prisoner "does not enjoy a constitutional right to the treatment of his or her choice," a prison official can violate the Eighth Amendment by wholly failing to evaluate an inmate with obvious medical needs to determine whether surgery is necessary).

For similar reasons, the Court finds sufficient Plaintiff's claims against Defendant Anna Kincaid, a former "Health Services Administrator for Wexford," who Plaintiff appears to allege was responsible for administrative denials of Plaintiff's requests for medical treatment.   (*See* ECF No. 2 at 13.)   Although Plaintiff does not allege that Ms. Kincaid treated him directly, he does allege that he made Ms. Kincaid aware of his serious medical needs through multiple grievances. Nonetheless, Plaintiff alleges, Ms. Kincaid failed to review Plaintiff's medical file or offer any other assistance to remedy the problem and "made the deliberate intentional decision to flatly

18

refuse any assistance to Plaintiff." (*Id.*) Plaintiff's allegations against Ms. Kincaid are not based on any theory of vicarious liability; rather they allege that she directly interfered with the medical decisions of the Wexford Medical Director and otherwise refused Plaintiff any medical care whatsoever. For many of the reasons stated above, such allegations of direct refusal to treat serious medical needs raise an inference of constitutionally inadequate medical care and are sufficient to state a claim and allow service upon Ms. Kincaid. *See Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009) (noting that a party other than a treating physician can manifest deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" (quoting *Estelle*, 429 U.S. at 104–05)).

Finally, with respect to Wexford itself, as the PF&R noted, "[a] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). As is the case with government entities, a corporate entity cannot be liable under § 1983 solely on the basis of *respondeat superior*. *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (holding that a local government cannot be held liable under § 1983 on the basis of *respondeat superior*). Rather, liability will attach to such an entity "only for those policies or customs having a '*specific* deficiency or deficiencies . . . such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). Accordingly, in order to proceed against Wexford, Plaintiff must allege that Wexford maintained an official custom or policy with respect to providing medical care that manifested deliberate indifference to Plaintiff's serious medical needs. *See Newbrough v. Piedmont Reg'l*

19

*Jail Auth.*, 822 F. Supp. 2d 558, 581 (E.D. Va. 2011) (noting that an inchoate entity defendant could be liable under the Eighth Amendment "for maintaining a municipal custom of constitutionally deficient care that caused [the plaintiff's] injury" (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997))); *Jackson v. First Corr. Med. Servs.*, 380 F. Supp. 2d 387, 392 (D. Del. 2005) (finding that in order for a prison medical provider to be liable on a deliberate indifference claim, a "plaintiff must show that [the provider] has a 'policy' or 'custom' that resulted in the alleged deliberate indifference to plaintiff's serious medical need").

In this case, Plaintiff has specifically alleged that Wexford, despite complaints from not only Plaintiff but also "numerous" other inmates about constitutionally inadequate medical treatment, had furthered a custom or policy of treating with deliberate indifference Plaintiff's serious medical needs.   (ECF No. 2 at 9.)   Accordingly, Plaintiff's allegations do not merely seek to hold Wexford vicariously liable for the actions of its employees; rather they implicate Wexford's overarching method for providing care to Mount Olive inmates.   Moreover, at least at this stage, Plaintiff has plausibly asserted Wexford's deliberate indifference.   His allegations that Wexford officials provided inadequate medical care, that Wexford either authorized or permitted the provision of such medical care despite its awareness of the nature of such care and numerous complaints detailing the "deliberate indifference" with which prisoners' medical needs were attended to, and that Wexford nonetheless allowed Plaintiff and other Mount Olive inmates to "suffer in pain needlessly," (ECF No. 2 at 9–10), raises an inference that it was Wexford's official policy to deny its inmates constitutionally adequate medical care.   *See Alvarez v. Corr. Med. Servs., Inc.*, Civil No. WDQ-10-179, 2015 WL 3917344, at *7 (D. Md. June 24, 2015) (finding a prisoner's deliberate indifference claims against Wexford sufficient to withstand a motion for

judgment on the pleadings where pleadings created a "reasonable inference that Wexford customarily denied care"); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584–85 (3d Cir. 2003) (allowing a prisoner's deliberate indifference claim against a prison medical provider to survive summary judgment based on evidence that the provider, in failing to establish a policy for addressing the medication needs of its inmates with serious medical conditions, "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights").   Accordingly, Plaintiff's claims against Wexford will be allowed to proceed at this early stage of the litigation.

## IV.     Conclusion

For the reasons discussed herein, the Court **SUSTAINS** Plaintiff's Objections, (ECF No. 16), **DECLINES TO ADOPT** the PF&R, (ECF No. 13), except as provided in this Memorandum Opinion and Order, and **RE-REFERS** this case, including consideration of Plaintiff's Application to Proceed without Prepayment of Fees and Costs, (ECF No. 1), to Magistrate Judge Tinsley for further proceedings consistent with this Memorandum Opinion and Order.

Consistent with the recommendation in the PF&R and the representations in Plaintiff's Objections, the Court **DISMISSES** Defendants Paul Parry, Sherry Cook, and David Ballard from the current action.   The Court **DIRECTS** Magistrate Judge Tinsley to order service upon Defendants Wexford Health Sources, Inc., Emil Dameff, Homa Rashid, Philip Shoaf, Sandra May, and Anna Kincaid.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        May 20, 2016

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE